UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONES LANG LASALLE AMERICAS, INC.,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>STEPHEN PALMESE,<br><br>　　　　　　Defendant. | Civil Action No.: 24-9602<br><br><br>**COMPLAINT** |

Plaintiff Jones Lang LaSalle Americas, Inc. ("JLL"), by and through its attorneys, Faegre Drinker Biddle & Reath LLP, for its Complaint against Defendant Stephen Palmese ("Palmese") hereby states and alleges as follows:

## INTRODUCTION

1. This is an action for reformation of a promissory note between JLL and Palmese and breach of that promissory note as reformed and, in the alternative, for a declaratory judgment outlining the rights of the parties pursuant to that promissory note and its subsequent amendments.

2. In 2018, JLL entered into an Independent Contractor Agreement with Palmese, in which Palmese agreed to provide services to JLL, including making sales for JLL's commercial real estate business.

3. As part of that Independent Contractor Agreement, JLL offered Palmese a forgivable loan pursuant to the terms of a separate (but related) promissory note.

4. The terms of the promissory note, as amended, mandated that in the event that Palmese separated from JLL before December 31, 2026, Palmese was required to repay the loan to JLL.

5. In February 2024, Palmese decided to separate from JLL. While he initially acknowledged in conversations with JLL personnel that he would need to repay amounts owed to

JLL, he changed course suddenly and refused to pay the outstanding balance on the forgivable loan.

6. Palmese claims that, under the terms of a second amendment to the promissory note, the full balance of the forgivable loan was forgiven upon his separation from JLL.

7. The second amendment was drafted at Palmese's request in order to defer the tax implications of the forgivable loan to the earlier of December 2025 or the date he separated from the company. If Palmese's claim were correct, the tax consequences would have been accelerated because the forgivable loan would instead be deemed a cash advance under IRS rules.

8. JLL now brings this action for reformation of the amended promissory note and breach of the amended promissory note (as reformed) or, in the alternative, to obtain a judgment declaring that the second amendment requires JLL to forgive the *lesser* of the balance of the loan or $1,015,313. In any case, JLL seeks an order requiring Palmese to pay the balance remaining on the loan, plus all applicable interest, expenses, and reasonable attorneys' fees.

## PARTIES

9. Plaintiff JLL is a Maryland corporation with its principal place of business in Chicago, Illinois. JLL is the holder of the promissory note described below.

10. Palmese is an individual who resides in New York and is a citizen of New York. Palmese is the maker of the promissory note described below.

## JURISDICTION

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between citizens of Maryland, Illinois, and New York, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district, and Palmese lives in this district.

13. This action is venued in New York pursuant to the terms of an Independent Contractor Agreement between JLL and Palmese.

14. This action is governed by Illinois law pursuant to the terms of an Independent Contractor Agreement between JLL and Palmese.

**FACTS**

**A**    **The Brooklyn Team Joins JLL**

15. In September 2018, Palmese and several colleagues moved their Brooklyn-based investment brokerage business from another real estate services company to JLL.

16. Those colleagues were Brendan Maddigan ("Maddigan"), Winfield Clifford ("Clifford"), Michael Mazzara ("Mazzara"), and Ethan Stanton ("Stanton") (collectively with Palmese, the "Brooklyn Team").

17. On September 18, 2018, the members of the Brooklyn Team joined JLL as independent contractors.

18. Palmese and Maddigan each joined JLL with the title of Vice Chairman.

19. Clifford, Mazzara, and Stanton each joined JLL with the title of Managing Director and reported to Palmese and Maddigan.

20. The Brooklyn Team had exclusive rights to all JLL investment sales transactions under $100 million within Brooklyn, for which the members shared all commissions.

B.     **The Forgivable Loan and Initial Promissory Note**

21.    On September 18, 2018, JLL and Palmese executed an Independent Contractor Agreement. A true and correct copy of the Independent Contractor Agreement is attached hereto as **Exhibit A**.

22.    The Independent Contractor Agreement outlined the terms of services that Palmese agreed to provide to JLL, namely, that Palmese would make sales of commercial real estate for JLL as part of the Brooklyn Team. *See* Exhibit A at I.c and I.f.

23.    In exchange for Palmese's services as an independent contractor, JLL agreed to provide him with compensation, expense reimbursement, and other benefits.

24.    One of those benefits was a forgivable loan. Under the terms of the Independent Contractor Agreement, on September 18, 2018, JLL provided Palmese with a forgivable loan (the "Loan") in the amount of $5,000,000, pursuant to the terms of a separate promissory note (the "Note"). *See* Exhibit A at Ex. A. A true and correct copy of the Note is attached hereto as **Exhibit B**.

25.    The Note, also executed on September 18, 2018, acknowledged that the forgivable Loan pursuant to the Note was part of the consideration for the parties' Independent Contractor Agreement, and memorialized that JLL would make the $5,000,000 cash loan to Palmese subject to the conditions contained in the Note. *See* Exhibit B.

26.    The Note stated that interest (based on the IRS-required minimum rate for employee loans) would accrue annually on the balance of the Loan from the date JLL made the Loan to Palmese, with that interest being calculated and added to the unpaid principal annually (but with such interest being forgiven if Palmese's team achieved annual gross origination or gross production of $1.25MM). *See* Exhibit B ¶ 1.

27.     The Note also stated that principal on the Note would be forgiven at a rate of nine percent (9%) per dollar of the higher of Palmese's gross originations or gross production in each calendar year from 2018 through 2025, provided that the parties engaged in discussions about increasing the forgiveness rate; the Note also provided that if Palmese's gross originations or gross productions exceeded $3,000,000 in any year, principal would be forgiven at a rate of 10% per dollar.  *See* Exhibit B ¶ 2.

28.     Further, the original Note stated that if the Loan were not forgiven by December 31, 2025, or if Palmese resigned without Good Reason, died, became disabled, or was terminated for Cause before the Loan was forgiven in its entirety, the debt pursuant to the Note would be due within 30 days.  *See* Exhibit B ¶ 3.

29.     The Note also mandates that if the debt pursuant to the Note is not repaid to JLL within 30 days of a written request for repayment, the outstanding debt will begin to accrue default interest at the rate of eight percent (8%) per annum.  *See* Exhibit B ¶ 4.

30.     The other members of the Brooklyn Team entered into independent contractor agreements, dated September 18, 2018, that were nearly identical to Palmese's.  They also received forgivable loans in varying amounts secured by promissory notes, dated September 18, 2018, with terms nearly identical to Palmese's promissory note.

C.     **The First Amendment to the Promissory Note**

31.     In or around September 2021, JLL and the Brooklyn Team discussed amending the members' respective Independent Contractor Agreements and the Notes.

32.     In the course of the discussions between JLL and the Brooklyn Team, JLL agreed to forgive a certain percentage of the amounts still outstanding on each member's forgivable loan.

33. JLL agreed to forgive approximately 22% of the outstanding amounts due on the forgivable loans made to the Vice Chairmen of the Brooklyn Team, Palmese and Maddigan.

34. JLL agreed to forgive approximately 15% of the outstanding amounts due on the forgivable loans made to the Managing Directors of the Brooklyn Team, Clifford, Mazzara, and Stanton.

35. To that end, each of the Brooklyn Team members and JLL needed to amend the members' respective promissory notes.

36. On September 30, 2021, JLL emailed a draft amendment to the Note to Palmese. A true and correct copy of the September 30 draft amendment to the Note is attached as **Exhibit C**.

37. The draft amendment to the Note specified that JLL had agreed to forgive $1,015,313 of the loan (representing approximately 22% of the outstanding balance) effective July 1, 2021.

38. Notably, other than the total amounts of the original loan and the total amounts forgiven, the draft amendment provided to Palmese was identical to the amended promissory notes provided to the other members of the Brooklyn Team.

39. Maddigan, Clifford, Mazzara, and Stanton each executed amendments to their promissory notes, dated October 1, 2021.

40. JLL and Palmese executed amendments to both the Independent Contractor Agreement and the Note (the "First Amendment to the Note"), dated October 1, 2021. True and correct copies of each, respectively, are attached hereto as **Exhibits D and E**. The First Amendment to the Note memorializes that as of July 1, 2021, the debt existing on the Note was $4,615,058. *See* Exhibit E.

41. The First Amendment to the Note revised paragraphs 1-3 of the Note, but left the other terms of the Note unchanged. *See id.*

42. Paragraph 1 of the Note was amended to adjust the annual origination or gross production figure requirements from $1.25MM annually to $100,000 annually. *See* Exhibits B & E.

43. Paragraph 2 of the Note was amended to extend the timeframe of the loan by one year from "2018 to 2025" to "2018 to 2026." *See* Exhibits B & E.

44. Paragraph 3 of the Note was amended to update the date on which the Loan would become due if not paid in its entirety (from December 31, 2025, to December 31, 2026) and removed certain conditions on what amounted to Good Reason for the purposes of terminating the Note. *See* Exhibits B & E.

45. As executed, the First Amendment to the Note did not, however, reference the forgiveness of the $1,015,313. *See* Exhibit E.

**D.     The Second Amendment to the Promissory Note and the Parties' Mutual Mistake**

46. On or about October 5, 2021, Palmese requested that the loan forgiveness date be changed from July 2021 to December 2025.

47. Palmese made this request because he wanted to defer the tax consequences of the $1,015,313 loan forgiveness.

48. Under IRS rules, amounts forgiven on forgivable loans are considered compensation at the time of forgiveness. Had the forgiveness occurred in 2021, Palmese would be liable to pay taxes on the additional $1,015,313 in compensation that year. Instead, at Palmese's request, the parties discussed deferring forgiveness of the $1,015,313 until December 2025.

49. Although he wanted to defer the tax consequences, Palmese also wanted to ensure that he would receive the $1,015,313 loan forgiveness at the time of his separation if he separated from JLL prior to the December 2025 forgiveness date.

50. As a result, the parties agreed to defer the tax consequences to Palmese by amending the Note, such that JLL would forgive the "lesser" of Palmese's outstanding Loan balance or $1,015,313 in December 2025 and that, if Palmese left "JLL for any reason prior to December 2025, the forgiveness" would be "effective as of his separation date."

51. The essential term of this additional amendment was for Palmese to defer the tax consequences associated with forgiveness of $1,015,313 of the Loan until the earlier of either December 2025 or his separation date from JLL.

52. In a further amendment to the Note, dated October 11, 2021, the parties memorialized their agreement (the "<u>Second Amendment to the Note</u>"). A true and correct copy of the Second Amendment to the Note is attached hereto as **Exhibit F**.

53. In relevant part, the Second Amendment to the Note states:

> You and JLL agree that in December 2025, JLL will forgive the greater of (i) your outstanding loan balance or (ii) $1,015,313. . . if you leave JLL for any reason prior to December 2025, the forgiveness set forth above will be effective as of your separation date.

54. The phrase "JLL will forgive the greater of (i) your outstanding loan balance or (ii) $1,015,313" was intended to read "JLL will forgive the *lesser* of (i) your outstanding loan balance or (ii) $1,015,313."

55. Neither JLL nor Palmese realized that a drafting error had occurred when the Second Amendment to the Note was executed.

56. None of the other members of the Brooklyn Team sought to defer the tax consequences of their forgivable loans and, therefore, did not enter into any further amendments to their notes.

E. **Palmese Separates from JLL and Refuses to Repay the Outstanding Balance on His Forgivable Loan**

57. In February 2024, Palmese informed JLL that he would be separating from JLL.

58. In discussing his separation with several other personnel at the company, Palmese acknowledged that he owed money to JLL pursuant to the Note.

59. Subsequent to those communications, however, Palmese reversed course, stating that his balance had been fully forgiven and pointing to the erroneous language of the Second Amendment to the Note.

60. Palmese's last day as an independent contractor for JLL was February 22, 2024.

61. On March 14, 2024, JLL informed Palmese that the Second Amendment to the Note contained an error due to the parties' mutual mistake at the time the Second Amendment to the Note was executed and demanded payment of the outstanding balance on the Note. A true and correct copy of the March 14, 2024 letter from JLL's counsel to Palmese is attached hereto as **Exhibit G**.

62. On March 22, 2024, Palmese denied the assertions in JLL's March 14, 2024 letter. Palmese stated that there was no mutual mistake regarding the terminology in the Second Amendment to the Note and that the term reflecting forgiveness for the "greater" of the Loan balance or $1,015,313 was fully intended by both parties.

63. If Palmese were correct and the parties intended the term to read "greater" rather than "lesser," then, under IRS rules, rather than *deferring* the tax consequences for Palmese, the amendment would have *accelerated* them.

64. Specifically, the entire outstanding balance of the loan would have been considered a cash advance at the time of the amendment—not a forgivable loan—because the obligation to repay the loan (which is a requirement under IRS rules) would have been illusory.

65. As a result, Palmese would have received an additional $4,615,058 in unreported, but taxable compensation in 2021.

66. The interpretation Palmese pushes now is both contrary to law and to what the parties contemplated in October 2021 when they entered into the Second Amendment to the Note.

67. At all relevant times, the parties contemplated at the earlier of Palmese's separation date or December 2025, the lesser of Palmese's outstanding loan balance or $1,015,313 would be forgiven and reported as taxable income.

68. As of December 6, 2024, the outstanding debt pursuant to the Note is $3,197,169.05 ($4,026,549.12 in outstanding principal, $32,379.62 in accrued interest, and $157,462.30 in default interest, minus JLL's forgiveness of $1,015,313, and minus forgiveness of $3,908.98 based on Palmese's revenue credit in 2024).

69. Pursuant to the First Amendment to the Note and in conjunction with Palmese's separation date, the outstanding debt on the Note was due to be repaid to JLL 30 days after Palmese's departure from JLL, or March 23, 2024. *See* Exhibit E.

70. Given JLL's written request for repayment as of March 14, 2024, and Palmese's failure to repay the outstanding balance by that date, default interest on the Loan began to accrue at the rate of 8% per annum on April 13, 2024 (30 days after JLL's written request for repayment). *See* Exhibit B ¶ 4; Exhibit F.

71. To date, Palmese has failed to make any payments to JLL for the balance owed pursuant to the Note.

# COUNT I

## REFORMATION OF THE NOTE AND SECOND AMENDMENT OF THE NOTE

72. JLL realleges and incorporates the allegations contained in paragraphs 1 through 71, as if fully set forth herein.

73. JLL alleges that the Court should reform the parties' contract to reflect the parties' true intentions.

74. The essential term of the Second Amendment to the Note was to assist Palmese by deferring the tax consequences of his forgivable Loan until 2025 or the date of his separation (whichever came earlier). The parties reached an agreement on that essential term.

75. In relevant part, the Second Amendment to the Note that was reduced to writing states that in December 2025 or on Palmese's separation date, JLL would forgive the "greater" of (i) Palmese's outstanding loan balance or (ii) $1,015,313. *See* Exhibit F.

76. The Second Amendment to the Note should have instead stated that JLL would forgive the "lesser" of (i) Palmese's outstanding loan balance or (ii) $1,015,313 in accordance with the parties' mutual agreement to amend the Note to defer Palmese's tax consequences.

77. The inclusion of the erroneous term "greater" and the omission of the accurate term, "lesser," as set forth above, was the result of JLL and Palmese's mutual mistake or a scrivener's error.

78. Indeed, use of the term "greater" would in fact accelerate the tax consequences that Palmese had hoped to defer, thwarting the purpose of the Second Amendment to the Note entirely.

79. The Second Amendment to the Note therefore does not reflect the essential term the parties agreed upon.

80. Neither party was aware of this error at the time the Second Amendment to the Note was executed.

81. The error resulting from the parties' drafting error is so substantial and material that it impacts the foundation of the agreement between JLL and Palmese.

82. Because of this mutual mistake/scrivener's error, the Court should reform the Second Amendment to the Note so that it accurately expresses the parties' mutual intention at the time the Second Amendment to the Note was agreed to, and to state that JLL will forgive the *lesser* of Palmese's outstanding loan balance or $1,015,313.

83. Further, Palmese breached his obligation under the Independent Contractor Agreement, the amendments to the Independent Contractor Agreement, the Note, and the amendments to the Note, as reformed, by failing to repay the balance of the Loan.

84. On September 18, 2018, JLL and Palmese entered into several valid, enforceable, and binding contracts (the Independent Contractor Agreement and the Note).

85. Pursuant to the Independent Contractor agreement, JLL agreed to provide compensation, expense reimbursement, and other benefits to Palmese (including the forgivable Loan pursuant to the Note).

86. In consideration for that compensation and those benefits, Palmese agreed to provide independent contractor services to JLL.

87. On or about October 5, 2021, JLL and Palmese agreed to amend the Note.

88. Pursuant to that amendment, as reformed, JLL agreed to forgive the lesser of Palmese's outstanding loan balance or $1,015,313 at the earlier of Palmese's separation date or December 2025.

89. Pursuant to the First Amendment to the Note, if Palmese resigned without Good Reason (as defined in the Independent Contractor Agreement and its amendment), the outstanding Loan balance, minus any applicable forgiveness, would be due within 30 days.  *See* Exhibit E.

90. The Amendment to the Independent Contractor Agreement defines good reason as "(i) failure of the Company to pay Contractor any compensation or benefits owed to Contractor under Exhibit A of this Agreement; (ii) relocation of Contractor's principal office outside of New York City without Contractor's consent; or (iii) material diminution of Contractor's titles, duties or responsibilities where such diminution does not arise from Contractor's own actions, inactions or behavior, as determine in the Company's reasonable discretion."  *See* Exhibit D.

91. Palmese did not resign from JLL for any of the reasons defined as "Good Reason" in the Amendment to the Independent Contractor Agreement.

92. Accordingly, any balance on the Loan was due to JLL within 30 days of Palmese's resignation.

93. Because Palmese's last day at JLL was February 22, 2024, the balance on the Loan was due to JLL on March 23, 2024.

94. Palmese made no payments to JLL to satisfy his outstanding Loan balance, despite the Amendment to the Independent Contractor Agreement's requirement that he repay the loan balance should he resign without Good Cause.

95. JLL has performed all of its duties and obligations under the Independent Contractor Agreement, the amendments to the Independent Contractor Agreement, the Note, and the amendments to the Note.

96. As a result of Palmese's breach of the contract, as reformed, JLL has sustained damages in the amount of at least $3,197,169.05, which accounts for the Loan's principal balance

as of Palmese's date of resignation ($4,026,549.12), plus applicable interest accruing at 2.83% ($32,379.62), plus default interest accruing at 8% from April 13, 2024 to the present ($157,462.30), minus JLL's forgiveness of $1,015,313 and minus forgiveness of $3,908.98 based on Palmese's revenue credit in 2024.

97. Those damages flow directly from and are the natural and probable consequence of Palmese's breach.

## COUNT II

## DECLARATORY JUDGMENT

98. JLL realleges and incorporates the allegations contained in paragraphs 1 through 97, as if fully set forth herein.

99. The Note and its amendments contemplate a forgivable loan from JLL to Palmese. The agreement between JLL and Palmese, as should have been reflected in the Second Amendment to the Note, was that in December 2025, or on Palmese's date of separation from JLL (whichever was earlier), JLL would forgive the lesser of his outstanding Loan balance or $1,015,313.

100. The Second Amendment to the Note, however, failed to conform to the agreement of the parties.

101. The failure of the Second Amendment to the Note to conform to the agreement of the parties (along with Palmese's refusal to pay the amounts *actually* owed pursuant to the Loan) has created an actual and substantial controversy.

102. JLL and Palmese have adverse legal interests that are of sufficient immediacy, given that JLL is owed repayment pursuant to the Note, and Palmese refuses to make repayment.

103. Pursuant to 28 U.S.C. § 2201, JLL is entitled to entry of a declaratory judgment holding that:

    a.  The Second Amendment to the Note has been reformed to reflect the parties' intent (i.e., the relevant use of "greater" has been replaced with "lesser");

    b.  Pursuant to the reformed language, JLL will forgive the lesser of (i) Palmese's outstanding loan balance or (ii) $1,015,313; and

    c.  Given the loan's principal balance of $4,026,549.12 at the time of Palmese's separation from JLL, JLL will forgive $1,015,313 of the loan.

* * *

  **WHEREFORE,** Plaintiff JLL requests that the Court enter judgment in its favor and against Defendant Palmese as follows:

  A.  Reform the Second Amendment to the Note executed on October 11, 2021, by replacing the word "greater" with "lesser" as to the amount of the Loan that would be forgiven either in December 2025 or when Palmese departed from JLL, and enter an order requiring Palmese to pay JLL, at a minimum, $3,197,169.05 for his breach of the Second Amendment to the Note, as reformed (which includes the Loan's principal balance as of February 22, 2024 ($4,026,549.12), plus interest accruing at 2.83% on the Loan annually ($32,379.62), plus default interest accruing at 8% since April 13, 2024 ($157,462.30), minus JLL's forgiveness of $1,015,313 and minus forgiveness of $3,908.98 based on Palmese's revenue credit in 2024);

  B.  In the alternative, enter an order declaring that the Second Amendment to the Note has been reformed, and that JLL will forgive the lesser of (i) Palmese's outstanding loan balance or (ii) $1,015,313; and given the loan's balance of $4,026,549.12 at the time of Palmese's separation from JLL, JLL will forgive $1,015,313 of the loan;

  C.  Award JLL its expenses and reasonable attorneys' fees incurred in this action; and

  D.  Award such other and further relief as the Court deems just and equitable.

-16-

Dated: New York, New York         FAEGRE DRINKER BIDDLE & REATH LLP
       December 16, 2024


By: */s/ Marsha J. Indych*
    Marsha J. Indych
    marsha.indych@faegredrinker.com
    1177 Avenue of the Americas, 41st Floor
    New York, NY  10036
    Telephone:  +1 212 248 3140


*Attorneys for Plaintiff Jones Lang Lasalle Americas, Inc.*